and the American Public Library Association. All rise. The L.A. County Court of Visitation is now in session. Honorable Mary Gail Henderson is next. Please sit down. Good morning, everyone. Before we start, let me just say a couple of things. Read a lot. 20 minutes is fine. It would be a coward having five additional minutes for rebuttal. You don't need to reserve that. This is a complicated case. We may be generous with time. Don't be anxious about it. We may all have questions. The second thing we can ask all of you to keep your voices up. This microphone records, but it's just not amplified. And there are people all the way in the back. And with that, we can start. Good morning. May I please have support? That is not a voice that is up. Good morning. May I please have support? That is not a voice that is up. The city appealed from a decision issued by the Illinois labor relations board concerning the city's implementation of a COVID-19 vaccine mandate for its  None of the parties in this matter have appealed before holding that the city's decision to implement a COVID-19 vaccine mandate and a recording requirement for its employees was, in fact, not a mandatory subject of bargaining but instead was, is, and remains a matter of inherent managerial authority over which no bargaining is ever required. It's the city's position, however, that the board erred when it determined the following that the effects of the vaccine mandate were mandatory subjects of bargaining that the city did not satisfy its duty to bargain in good faith over those effects and that this unfair labor practice charge should not be deferred to the extensive arbitration proceedings that ensued before and the multiple arbitration awards that issued by arbitrator George Rummel. While the city maintains that the board erred when it determined that the unions did not waive bargaining over this issue and that the city failed to provide information to the unions concerning the vaccine mandate the city respectfully rests on its briefs and arguments made in its briefs regarding those issues. I'm sorry, on the information you rest and what's the other one? The waiver. The waiver issue. Okay. Turning to the first issue. So you're saying you're holding to that argument but you're going to move on to probably more important things? Correct. The board clearly erred when it found that the impact of the vaccine mandate was a mandatory subject of bargaining. It is well established that not every impact of every managerial decision is something that must be bargained. In fact, it's well established that where the impact or effects of a decision are not severable from the decision itself, there is no obligation to bargain about those effects. I'm going to ask you, because I think that's a really hard question, I'm going to ask you to start with deferral just because I do think it's your probably strongest argument. I mean, whether the impact or effects can be severed may be subject to argument, and certainly your position is the arbitrator saw them as not severable. The board clearly saw them as severable. There are cases going both ways. That distinction is very hard to draw. I'd like you to start your focus on whether the board should defer to the arbitrator's determination that it wasn't severable, which I think encompasses your position, and it's not to some extent that they aren't severable. It certainly does, and we're happy to address that argument because we too agree that that is the city's strongest argument in this case. Well, I think we always start with our strongest arguments. The board improperly declined to defer the effects bargaining issue in this matter pursuant to the doctrine of Spielberg deferral. At the outset, we do want to note that there is a question about the standard of review in this matter. The board has cited to an abuse of discretion standard, whereas we refer to and rely on a clearly erroneous standard, but the city submits that under either standard, and including the abuse of discretion standard, the board's decision not to defer to arbitrator Ramel DeWars in that proceeding was wrong. Well, I think there are decisions, particularly NLRB decisions, that say the failure to adhere to the standard is an abuse of discretion, and then your determination as to whether they have adhered to the standard is reviewed as a clearly erroneous. So I think it comes down kind of to the same thing, but it does use the word may, which suggests that it's not an abuse of discretion standard. That does. Section 11I of the Illinois Public Labor Relations Act certainly makes it a discretionary decision by the labor board, but it is certainly our position that the application of these facts to the law under Spielberg, it involves a clearly erroneous standard of review. So deferral requires the arbitrator to have considered the statutory issues. So how do you reconcile the arbitrator's express disclaimer of authority to decide statutory unfair labor practice issues? Quite easily, because the labor board itself has held that the fact that an arbitrator in an arbitration award explicitly states, I am not considering nor am I deciding the unfair labor practice issue is completely irrelevant. The labor board itself, in its case, says that is not determinative. Instead, the analysis that's used under that first prong of Spielberg deferral is one of, was the unfair labor practice issue presented to and considered by the arbitrator? And how was it presented to and considered by the arbitrator? So in this instance, the parties proceeded before arbitrator George Rommel in December of 2021 within two months of the conclusion of the voluntary bargaining between the parties on the vaccine mandate. The entire bargaining history between the parties on the vaccine policy was presented to arbitrator Rommel. The issues presented to arbitrator Rommel considered, did the city have the right to implement a vaccine mandate? Was it privileged to do so under the collective bargaining agreement? What was the impact of that decision, namely the policy consequences for violating it, no pay consequences, disciplinary consequences, the actual effective date by which employees needed to be vaccinated? All of those issues stem from the exact same operative event, which was the city's decision to implement a vaccine mandate. Not a recommendation, not an advisory, not a suggestion, but a mandate as a condition of employment. Everything that flowed from that decision was presented to arbitrator Rommel, both about the decision as well as those effects. And that continued over a two-year period of time. We proceeded before arbitrator Rommel in December of 2021, first in the context of a mediation, which, by the way, is the hallmark of an interest arbitration proceeding under either Section 14 of the Illinois Public Labor Relations Act or under the alternative impasse resolution procedure the parties have negotiated in their own collective bargaining agreements here. Failing to resolve it by way of mediation, the parties proceeded to hearing in front of arbitrator Rommel. The decision on the vaccine mandate, he upheld it. It became a term of condition of employment between these parties and a part of the collective bargaining agreement. He upheld the effective dates, although pushed them out and delayed them somewhat, again in recognition of what the union had been arguing about that impact issue. The parties continued, and frankly, the unions continued to invoke arbitrator Rommel's retained jurisdiction over all of these impact issues. So every time discipline was imposed, the unions would go back to the arbitrator and say, can the city do that under the collective bargaining agreement? On the contrary. On the contrary. What the unions did is invoke the jurisdiction of arbitrator Rommel to determine what the discipline matrix would look like. That's what I'm saying. They would go back and say, no, no, the city violated the contracting agreement, and he would say, no, they haven't. At no point was the union complaining that the contract was violated, and at no point were these arbitration awards and supplemental opinions indicating that the contract was violated. Instead, arbitrator Rommel was determining and issuing substantive terms that governed the parties' relationship at this point. Isn't that unique to the urgency of the situation, the fact that this was COVID? Absolutely. The bargaining context of this case cannot be diminished and cannot be understated. By August of 2021, when the city announced its decision to have a vaccine mandate for all employees, the pandemic, as much as we'd like to forget it, as much as we'd like to pretend that did not exist, it was continuing to rage at that point. The variance of the COVID virus continued to worsen. They continued to develop and mutate. Surges continued to be experienced in the state of Illinois. Undeniably, there were exigent circumstances in this case. So are you saying through the arbitration process, the city, in fact, bargained on impact and effect? Absolutely. Every single conceivable effect issue that the union sought to bargain about, they presented to arbitrator Rommel. They were the ones who invoked his continued jurisdiction. The city at no point objected. The city was more than a willing participant in that, and it reflects the city's good faith as part of the bargaining obligation under the DAC. So if we don't interpret it that way and we believe that the arbitrator was wrong, that effect should have been bargained, that the city could implement a policy, but the effect should have been bargained. Is that a part of this case? Do we even get to that even if we disagree with the arbitrator? The arbitrator considered all. So if we start from what the duty to bargain entails in this case, particularly with the protected service unit under Section 14 of the IPLRA, they don't have the right to strike. And the unions insist that to resolve this labor dispute, it had to go to interest arbitration. Our position is if that is true, if there was a bargaining obligation about these effects, the city satisfied that fully, and by proceeding to arbitrator Rommel and by invoking his jurisdiction to address every single one of those impact issues, it satisfied that duty to bargain in good faith. So you see there was impact arbitration, but even though nobody ever labeled it as that, called it that.  But can we also interpret what arbitrator Rommel did as interpreting the contract, interpreting the city's one-off, management one-off under the contract? You can enact the policy and here are the effects. These are all permissible effects under your management right. The initial decision that arbitrator Rommel issued did precisely that. He also included the date that was going to go in and included no pay status, I think. Correct. It included a lot of the effects.  So that was an interpretation, was it not? If we don't want to view this as impact arbitration, can we also view it as contract interpretation? I guess that's my question. You can view it as impact arbitration. We certainly viewed it as impact arbitration, but you can also view it as a grievance arbitration proceeding under Spielberg that resolves all of the effect QLP issues. And basically said, yes, city, you can do this under your contract. In this very specific instance of COVID, you can do this under your management rights under the contract. And the labor board did, the AOJ and the board, did recognize that the decision here, again, it was not a mandatory subject of argument. It was not something that had to go to arbitration, but arbitrator Rommel certainly did decide that term for the party-select bargaining agreement at the end of the day. So it was, and he upheld, a COVID-19 vaccine mandate for these employees. No question. And so when we look at other jurisdictions, New York, Boston, Los Angeles, Seattle, San Francisco, who actually did bargain on effects, you say you did the same. We did. We did it before arbitrator Rommel at the union's request. That is where they invoked it. They did not direct effect bargaining outside of that process before arbitrator Rommel. Once the city announced its last best final offer and implemented it in October of 2021, the union did go back to the city about some privacy concerns about the portal, about the vaccine portal and the reporting of their status. And the parties did engage in the back and forth on that. But at the end of the day, the union invoked arbitration to deal with all of the effect issues. That is where they exclusively pursued those issues. The city was more than willing to partner in that respect in honor of its duty to bargain and do good things. So your position, essentially, your main position is we did bargain over effects. At the end of the day, yes. If there is an obligation to bargain over the effects, not severable from our perspective. But if that obligation lies, we absolutely satisfy. Well, let me go back to you saying it's not severable because at the outset you said, we don't have to bargain over implementation, but we do have to bargain over effects. That was your opening position before anything happened, correct? Correct. Now your position is we didn't have to bargain over effects either. It is certainly, certainly the premise that there is no obligation to bargain about the decisions. From the city's perspective, legally there isn't an obligation to bargain about the effects. But if that existed and you find that it's so, the city satisfied that obligation to bargain in good faith. It did so at the bargaining table through its voluntary negotiations with the union, and it did so as part of the extensive arbitration proceedings that ensued before arbitration went out. Well, it would seem kind of untenable to accept the city's position that they didn't have to bargain over effects at all, that they could just make up whatever rules they wanted, especially when we look at other jurisdictions that did. That seems a little untenable position, don't you think? It would be untenable if this were a per se refusal to bargain case. This is not one of those cases. The parties frequently, as part of this statutory framework, recognize that there are legal determinations that may eventually be made and come to fruition before the labor board and the proceeding. But the city and the union recognize they had differing legal positions. That did not result in a per se refusal to bargain by the city. It did not say we're not giving you notice and we're not bargaining about the impact. They did, in fact, give notice of the decision. The city did, in fact, offer to bargain, despite having different legal positions, did, in fact, agree to and did, in fact, bargain in good faith. There were at least five bargaining sessions between the parties, between August and October of 2021. In addition, they repeatedly and on multiple occasions discussed the vaccine mandate and the policy implications during that time period. There were lots of exchanges of proposals and counter-proposals. Are you talking about the period after the initial award and during the period? I'm talking about before the proceeding, before the first award. And in that award and in the supplemental award, did he order the party to do something different than the city had initially proposed in some instances, in terms of discipline? In terms of discipline, he created a discipline matrix to govern this entire proceeding. The city does not have a discipline matrix or it did not propose a discipline matrix for the vaccine mandate. But, again, when the union invoked his jurisdiction to address discipline, he devised a matrix and the city complied with it in all respects. He certainly delayed the implementation dates as far as when the COVID vaccine requirement would be effective for these employees. So there was further modification from the city's initial position on that. And, again, under deferral and under Spielberg deferral, one of those factors and criteria is, were the proceedings fair and regular and did all parties agree to be found by the law? And nobody disputed that. Nobody disputed that. Outside of an initial motion to vacate the first award by arbitrator Romel, which the unions have the right to file under the Uniform Arbitration Act, there has never been a subsequent or ensuing motion to vacate any of his awards. And everybody has complied with those awards. How much would it cost, if you know, the city to undo everything he has ordered? I do not, standing here today, have an estimate. At the end of the day, there are three police officers. Out of all four bargaining units that are subject to this case, there's a large bargaining unit of police officers, the sergeants, lieutenants, and captains respectively represented by the PBPA. There are three rank-and-file police officers who never complied with the policy who are pending separation. But that ultimately has to be done by the police board. I'll get back to you on that issue.  So, ultimately, there were a handful of officers. At the end of the day, the sergeants, lieutenants, and captains, as I recall, have not suffered any or experienced any discipline under the policy. So there's no back pay, essentially, that's incurred there. And then there are a handful of officers who were subject to the disciplinary matrix that arbitrator Romel, again, imposed upon the parties as part of this interest arbitration process. So how do we make clear here that the board's determination that the city needed to bargain on the impact effects? Again, if we look at what the labor board ordered as a remedy outside of undoing the policy, it's an order to return to the bargaining table with the unions, and it is ultimately to bargain to impact and or an interest arbitration. Everything that ensued before arbitrator Romel, and that he ordered and issued, defined it. It's exactly what the labor board essentially ordered in this case. The way it happened is it happened without the labels, and we would submit that the court should not elevate form over substance in this case. It is important to look at substantively what happened and ensued in that arbitration proceeding before arbitrator Romel. Are you familiar with the other unions? Is this parallel to what's happened with the other city unions? So the other city, the COOP, the COOP now is actually pending before this court. It is fully briefed. It was the same vaccine mandate, but it obviously developed under a different framework for resolving legal disputes or legal disputes under the Public Labor Relations Act. They are not subject to interest arbitration. However, all of the unions in that case, as well, proceeded before arbitrator Romel in the context of a grievance arbitration, and the city also participated in that and urged both the labor board, as well as this court, as it's pending now, to defer in that instance as well. And I guess my last question to other people is, it seemed to matter a lot to the board, or to the ALJ, that arbitrator Romel never specifically said, I'm deciding this act. And what's your response to that? Again, I defer to the, no pun intended, to the labor board's own ruling on this issue. The fact that an arbitrator in the award that is the subject of a deferral motion explicitly states, I'm not deciding this issue, is completely irrelevant. That's not the inquiry under the first prong under Spielberg deferral. It is instead, were the factual issues, were the ULP issue and the contractual issue presented to that arbitrator factually parallel? And were those facts generally presented to the arbitrator? That's the standard, not did the arbitrator say yes or no in considering it. That's never been the labor board's decision in that respect. And all of the other criteria under Spielberg deferral are easily satisfied, without only from the city's perspective, such that the failure to defer in this instance is error, and also an abuse of discretion. In your view, is there any remedy to be had on the union's claim that the city failed to provide information given where we are now? From the city's perspective, no. At no point during any of the bargaining that ensued between the parties, but more importantly during the two years plus before arbitrator Romel, did the union cite to a lack of information as an inability to bargain about or make proposals about or discuss with the city the purported effects issue. That never impeded their ability to bargain in this instance. And so we would submit that any outstanding information request, A, was not followed up on, and B, did not hinder the union in any way, shape, or form in performing their obligations or the city's obligations under the Act. And I lied. I have one more question. Does it matter at all in your view that the ALJ did defer pre-grievance on everything and that it didn't defer post-grievance, post-award on the effect? I know that obviously the board is not bound by that pre-deferral decision, but did the arbitrator know about that pre-deferral decision? Did the arbitrator believe that the board was deferring to him? At the time the deferral motion was decided by the administrative law judge in the do-go contacts, so grievance is filed, parties are proceeding, but no award has issued. At that time, the arbitration record initially was closed, and briefs were in either just been filed before him or were about to be filed before him. Without examining the briefs, I'm not sure if we presented that issue to arbitrator Renau, but by the time that decision do-go deferring the matter, it's not clear whether he was specifically a product of that. But it was certainly a do-go deferral on everything raised by the charge at that point in time. The city's position is that at the point at which arbitrator Renau began to issue arbitration awards, and at every juncture, because I know the board and the unions have indicated that the city waived its right to file a motion to defer or wasn't entitled to file multiple deferral awards or motions, we respectfully disagree with the board. Rules don't differentiate between the types of deferral. There is Collier, there is D'Youville, there is Spielberg. But the city would have been remiss had it not renewed that motion to defer as those awards and supplemental opinions and orders kept being issued. Pursuant to the union's invocation of arbitrator Renau's jurisdiction. But didn't those additional awards just give you more ammunition on an argument that you were already making based on the first awards? It just gave you more evidence. It didn't change the nature of your argument in any substantive way. It didn't change the nature of the argument, but it absolutely foreclosed even more effect issues that remained outstanding. Because he kept his time. At the union's request. Yes, at the union's request. And the board was aware of these supplemental awards at the time it issued it. At the time of the board's final order in this case, of which we have appealed here, yes, they were aware and they declined to defer. So is it relevant whether or not the city made arguments regarding exigent circumstances before the ALJ or the board? The city absolutely made arguments about exigent circumstances both before the ALJ and before the board. That is not waived. The city hasn't waived any argument from the city's perspective. When the charge was followed, the city waived every conceivable argument in defense to that ULP charge in the investigation stage. When the complaint procuring issue, the city moved in a timely manner to defer that complaint within 25 days, as the board's rules require. At every single juncture of the board's proceedings and handling of this unfair labor practice charge, the city waived every single argument raised in this case. There has never been a fourth charge. I have a question for Justice Wilson. I think Justice Johnson sort of asked this question, too. What would be the way that we would analyze this that was very COVID-specific, in your view? How is this different than next year, the city comes up with a policy it wants to implement and, you know, it would prefer to have it. How do we analyze the COVID aspect of this? That is the hallmark of evaluating a party's good faith bargaining under Section 74 of the Act and Section 7 of the Act. The totality of the circumstances. The parties don't bargain in a vacuum, and here they were bargaining in the midst of a global pandemic. That cannot be understated, and it cannot be relegated to a footnote where the Labor Board's ALJ indicated, well, vaccines were available for the prior eight months. You should have done something sooner. That respectfully minimized the circumstances, the dire circumstances the city was facing day in and day out as the pandemic continued to rage. So as part of the totality of the circumstances test and evaluating good faith and the city's good faith here, that is absolutely part of the equation. So if we were not in a pandemic, are you making the same argument? If we're not in a pandemic, the city maintains that it satisfied its obligations here. It bargained with the unions. It bargained to impact with the unions, and it proceeded to interest arbitration with the unions, and it participated fully, and it's bound by those awards fully. Pandemic or no, the city's position is it satisfied its obligations fully here. Is this, at least initially, that the city went too far in terms of some of the rules, especially when you're talking about a union that members can't strike? But are you saying that because the city, one of the remedies was to put people on unpaid leave? I guess the problem is the status quo needs to be in place while you negotiate on some of those things, and here it was untenable for the status quo to remain while you bargain. Is that the city's position? So the city's position is that the decision didn't require any bargaining. So the decision to have a mandate didn't require any bargaining. I also disagree with that. But the city did participate. So at the point at which the city announced it was unilaterally implementing this policy as applied to the sworn members of the police department and the bargaining unit, those bargaining units, to their credit, they filed the labor sector charges we see here, they filed the grievances that we see here, and they also filed a temporary restraining order and a request for an injunction in circuit court in aid of arbitration, and that was granted, and the policy was paused while the parties proceeded, and the city did proceed to an expedited process in front of arbitrating them out. So they got the full benefit of their bargain? Absolutely. A hundred percent. If there are no further questions, I'll reserve my time for rebuttal. Thank you. Good morning, Your Honors, and may it please the Court. I'm Assistant Attorney General John Studer on behalf of the Labor Board. I'm going to be splitting time with the unions today. I plan to speak for the first ten minutes, and then the unions have their minutes. I meant to ask you at the outset. Yes, of course. I'll try to keep my voice up. I know I'm generally soft-spoken, but I'll do my best. I'll start with deferral. The Board is not at unions' discretion in declining to defer to the arbitration award. Reversal is only appropriate if no reasonable neutral can decline to defer under these circumstances, which is not the case. Most of the city's arguments go to whether there would have been discretion to reach a contrary decision. That's not enough. They need to show that the Board lacks discretion to defer at all. But in any event, the Board had no discretion to defer to the arbitrator here. One of the requirements of Spielberg is that the unfair labor practice issues must have been presented and considered by the arbitrator. This is not a form over substance argument whatsoever. It's generally hard to prove a negative, that something didn't occur, but in this case we have the benefit of the express statement from the arbitrator himself. This was not his first time dealing with a labor arbitration. He's experienced, he made perfectly clear he did not address the interest arbitration. He also made clear he was not addressing unfair labor practices issues. Okay, but if you would agree, would you not, that the unfair labor practice issues, in this case, are intertwined, if not governed, by what the collective bargaining agreement allows? I would disagree with that. I think that's true with respect to the decision itself. So the decision to have the policy itself is what the arbitrator addressed, and he found that there was a management right, and the Board did defer to that. So there's no ability for the unions to challenge the decision itself. But that is a distinct question from whether the city has an obligation to bargain over the effects of that decision on the terms and conditions of employment. But the city argues that even though the arbitrator stated that he was not deciding it, he actually did, in fact, make those similar decisions, and that the parties did actually engage in negotiations or bargains. So is she saying, don't listen to what he said, but look at what he actually did? Well, I think you can choose either path. If you look at his limitation that he imposed, it's clear. And if you actually look at what the arbitrator did, I think you'll find that the city's characterization is inaccurate in two different ways. First of all, their obligation to bargain the effects has to occur before they unilaterally implement the policy. Right, because they couldn't even put the policy in place, in your view, until they bargained the effects. That's correct. He said that when he won his first award, he did the first shot by March 13, 2022, and the second one by April 13, 2022. That means he goes. He's saying go. He was not serving as an interest arbitrator at all. He does say go on these dates. That's a fact, is it not? He touches on some of the effects in a different way. So with respect to the implementation date, and I'll expand on that, but he addresses the implementation date from the perspective of this is a reasonable policy. He's looking at whether these are reasonable work rules under the Management Rights Clause. He's adjusting the implementation date. But if you read the arbitration awards, I've re-reviewed them three times after I read the strong statements in the reply brief, and I continue to disagree with the characterization. Okay, then tell me what it means when he says start on March 13, 2022. He's saying go, is he not? And you're saying can't go until you bargain the facts. He is saying that he's adjusting the implementation date backward because it was impractical. He's not saying that you don't have to bargain over the effects issues. He's saying I'm considering whether the implementation date that you put in place is practical, and he says it's impractical, I'm moving it back. But he never addresses most of the effects issues that the board recognized. For example, he doesn't say whether members would get injury on duty status for side effects. He does not address identification of officers who incurred expenses from vaccines. He does not address who would pay for testing costs, and he does not address the financial incentives to get vaccinated. He doesn't touch any of those issues. He touches on implementation date in the perspective of reasonableness. And he comes up, according to the city, and I can see it in the supplemental awards, with a whole disciplinary framework. I have to push back on the disciplinary piece. The disciplinary piece, he did come up with a framework, but I think you have to be very careful in seeing what's the context. It wasn't that the parties presented competing views of what should be the consequences under the vaccine policy. What happened was after the city implemented its vaccine policy with the no-pay consequences, it also made the decision to start disciplining the sworn officers for failure to obey direct orders. So it went outside of its own policy, and it started disciplining them for not obeying a direct order to comply with the policy. And so my understanding of those arbitration awards is that he was looking at the party's past discipline history of disobeying a direct order and saying that the suspension that you gave to these officers for disobeying a direct order was out of line with your past practice. I'm adjusting them down. But he is, in effect, saying you can impose this discipline vis-à-vis the vaccine policy. I don't think that's what he's doing. I think he's saying there is a limitation in your contract on the amount of discipline you can impose. But I see it a little bit analogous to a contempt proceeding in the courts where he's saying you're a paramilitary organization. Even if you disagree with the underlying direct order, this is not the place for you to challenge it. You can challenge the amount of discipline if you have to obey it now. You can challenge the amount of discipline through the contractual grievance process. And if you want to challenge the underlying decision, you do that otherwise. You don't get to just disobey the direct order. I guess a question for you, and I'll try again, is what do you do with the decisions that arbitrator Rommel made vis-à-vis the implementation of the policy, whether it's the date it starts or the no-pay status or the discipline imposed? Do you say, as the city says, well, we view that as impasse arbitration determination, or do you view it as another way to view it, and the city is also arguing this, as him interpreting the contract? Or what do you view it as? I'm viewing his decisions as limiting what the city can do based on the contract, which is a separate question from what it is. But it has nothing to do with the implementation of the effects of the policy, including the date the policy is going to start. I think the date is a little bit closer of an issue, but just because he does address the implementation date through a different pathway, that is unreasonable. But even if you give up, I mean, that seems to go to the inseparability issue. So even if you were to give up that the implementation date was inseparable from the policy itself, you still have the other six effect issues that the board found and over which the city did not argue through impasse and interest arbitration. And another point I'd like to make is even if you were to characterize the grievance arbitration before Arbitrator Rummel as an interest arbitration, it didn't occur before the unilateral implementation, that it's still an unfair labor practice. What would be the remedy for that type of unfair labor practice? Undo everything? Well, it's challenging. Those are not the facts here. The board found them. So I don't need to say what remedy they would impose under those circumstances, but I do want to emphasize that – apologies. Well, defer is only proper when arbitrators' remedies are comparable to the board remedies. So why aren't they essentially the same here? He didn't intend – I mean, I think if you look at the massive difference between the remedies, that further confirms his own statement that he didn't address unfair labor practice issues. He just ordered a further bargaining session with respect to masking and testing, and I think that he explained that this was going to be supplemental record volume 4 at pages 945 and 947. The reason he's asking for supplemental bargaining on those two issues is so he can further expand on the reasonableness of the policy. He has in no way addressed the effects or found that the city did not need to bargain over the effects. I mean, as the ALJ pointed out in the opinion, he never addressed whether the TBA precludes interest arbitration on effects. He never decided whether the city has TBA authority to require employees to take testing out of their pocket. He never decided whether the city had contractual authority to require vaccination on the employee's own unpaid time, and he never decided whether the city had contractual authority to set discipline levels unilaterally. So we could find then that the board was correct in its finding that there was unfair labor practice, but that abused its discretion in the remedy? No, I don't think that would be appropriate here, because I think the difference in the remedy, how he characterized whether he was looking at interest arbitration or unfair labor practices, the actual substance of his decisions makes clear he didn't address unfair labor practice issues, and those remain for the board to remedy them. I go back to the fact that the unfair labor practice issues really depend on whether the contract allowed the city to do what it did without bargaining. Right? That's what they depend on. That's what the board said. City, you can't do this without bargaining. You can impose a policy without bargaining. That's fine. We agree. The board agrees, right? The board deferred on the decision. It didn't say you could go ahead and implement without bargaining the effects, but it did agree that they didn't have to bargain the decision itself. Right. So everybody agrees with that. And then the arbitrator, the city says, said, yes, and you can also implement it in this way, on this date, within its discipline, with these provisions, everything that you are calling reasonableness, the reasonableness, the arbitrator decides reasonableness, and the city says that is, in a sense, it is, in fact, deciding effects. Right? I disagree with that. The arbitrator may, first of all, say, Okay, you agree that this is an effect. That's an effect. Do you agree with that? I agree that the implementation date is one effect, yes. It's one effect. It's one effect, I know, right? Okay. And you say, so you didn't decide any other effects. That's right. Even including improving the discipline, you said that's not him deciding any effects. I think that's right. I think he touches on discipline, so it is in the same subject matter, but it's not like they present competing proposals as to what it should be under the policy, and then the interest arbitrator selects which one to apply. We just had an interest arbitration. Exactly. It's a contractual obligation. Okay. So if you say that the city didn't have to bargain with respect to the decision, isn't that an empty statement then if you allow the union to thwart it going through the bargaining process during a pandemic? No, not at all. No one is going to allow the unions to thwart them being able to implement their vaccine policy. When does it end? Because the status quo needs to be in place during that bargaining, so that means no policy during the COVID pandemic, and it can go on and on and on and on about all these little pieces of the puzzle and negotiating, and now the pandemic situation is even worse. There's nothing being done. Isn't that an empty promise that just thwarts the whole purpose of the mandate? It is not, Your Honor. It's just requiring them to respect the labor law and the balance of power between the employers and the employee that's struck by the General Assembly. I will note, I mean, your question really goes to, I think, exigent circumstances. It gets to the point of it's COVID so special that there should be a special pathway here, and, I mean, the answer to that is there's an existing defense. We don't need to change the labor law. There's an exigent circumstances defense, and it's just it was not raised here. It was forfeited before the ALJ. It was not raised there other than a brief mention of maybe the word exigent circumstances, and as we point out in our briefs. You said forfeited in my way, so is there a distinction here? Can we ignore whether or not it was forfeited in a way? Well, I think that it's a highly factual, intensive defense, so I would say even if you found that you had the power to consider it on your own motion, that you should disregard it because the factual record hasn't been developed, but I would say even if you reach the merits question on that, it's a very high standard. It is that there's no real alternative for the action taken and that the emergency allows no time for meaningful negotiations before the action is taken, and it cannot have been caused by employer delay. So there's a mention of April 2021 for when the vaccines became available in the briefs. That's from the COOP case, and in the COOP case they did raise an exigent circumstances defense, and the ALJ dealt with it in the decision. They didn't here it, but this case is different. It's actually a worse defense for the city in this case. These are sworn police officers. This is on many judicially noticeable websites in the state of Illinois, but these officers were eligible to get the vaccine in January of 2021. The city did not first announce its intent to have a vaccine policy until August 16th of 2021, so approximately eight months had gone by with these vaccines being available to the officers before the city even let them know that we want to have negotiations about this, and then they cut off the process in the midst of negotiations after less than two months. But wasn't there things going on within the medical community about the effectiveness of vaccines and the difficulties with the vaccines, which company's vaccine was more appropriate than others that might give the city pause in coming up with a policy? I think your Honor's question underscores how factually intensive an exigent circumstances defense would be, and that's all the more reason not to consider it given that they forfeited it for the ALJ and didn't develop that record. So I don't think there's anything they could point to in the record that would establish that that was the reason for their delay and that somehow it should be excused. But the U.S. Supreme Court seems to have had no appetite to deal with any of these COVID mandates. Does that say anything? I don't want to speculate on their reasons for that. I would just suggest that your Honors don't need to address that in much detail because the exigent circumstances defense wasn't waived. I think this case really can be resolved on just black-letter labor law principles. I want to take one moment and return to the deferral question because I think I just want to emphasize some decisions that were cited in our brief and not responded to in reply. I think they resolve this pretty clearly. The city was using a factually parallel language to say that the arbitrator had considered these issues. That language comes from decisions of the National Labor Board. There's two decisions cited in our brief. Armour, it's 280 NLRB 824, and Inmate Proler, 332 NLRB 630. They make clear that whether the contract allows a decision to implement the policy is not factually parallel to whether the employer had an obligation to bargain the effects. And I think that's exactly right. Can you say that again? Apologies. Whether the CBA allows a decision to implement the policy is not factually parallel to whether the employer had an obligation to bargain the effects of that decision. Well, that's right. The implementation and effects can be separated sometimes. Is that what those cases say? I would say most of the time the effects and the decisions themselves are separable, and the inseparability standard is quite high. I understand. I understand. But is that what those cases say, that they're separable? Those cases you just read. Right, right. The fact that you can have the right to implement without bargaining, without the right to determine the effects without bargaining. There are cases that say that. Absolutely. You've cited a bunch of them, including the ILR, including your own case, the board case. Is that what those cases are saying? I mean, I don't think the city disputes that, that they can't be separated, but they weren't in this case. I think that's what we're finding. Okay. On that point, I would emphasize that what we're finding about them is a factual characterization of the arbitrator's awards. And we should give quite a bit of deference to the board's interpretation of those awards. Because? Because it's a factual determination about what happened in those arbitration proceedings. And we should defer to the board's interpretation of the arbitrator's award? I mean, we're talking about deference. Isn't there also a whole line of board cases saying the board should defer to the arbitrator on what a contract means? Right? The arbitrator is the interpreter of the contract. We have to defer to them also. What the board is saying here is that it didn't interpret the contract about whether they had an obligation to bargain the effects. They're saying the board, that the arbitrator, did not make that determination. Correct. I understand that. And you're saying we have to defer to that determination because, I mean, because it's a determination of fact or a determination of law and fact? It's their interpretation of what happened in those proceedings. I think it's a factual question.  Can you respond to my other question, though? Is there board law that the arbitrator is, in fact, the ultimate interpreter of what a contract means? I mean, the board is not there to interpret what a contract means. The board is there to impose the act. Right. I mean, I think the board often will defer to how they interpret the agreement or the arbitration, but we're not disagreeing. It's not like the board is saying we disagree with how the arbitrator interpreted the contract. They have deferred to what they understand him to have interpreted. Right. But I understand that. But in their view, they are deferring to the part that he actually decided in their view.  Okay. Can I go back to a little nitpicky issue on the exigent circumstances? Again, you used the term forfeited. So I just want to make sure you're using the term forfeited versus waiver, or it doesn't matter between the two, and does it apply to us in our ability to hear the argument beside the issue? You said forfeited, so does it apply to us? Does it borrow us the time in deciding the issue? I know we said it's fact intensive, but does that tie our hands? I think, in general, the court has the power to look behind the forfeiture curtain. I don't think that the record has developed to permit that here, and I do think this court should avoid going down the exigent circumstances path because the record wasn't developed on this highly factual intensive question. And then I will also just reflect on that. Well, I mean, I think some of the questions that Your Honor asked earlier get to the heart of it. I think if the defense were fully fleshed out, it would be shown that the city delayed in starting these negotiations. They created the delay that they say caused them to have to cut off the negotiations early. And then Your Honor's questions went to, well, weren't there some medical reasons or regulatory reasons that people were hesitant to make vaccine mandates? Those are factual questions specific to the city and what its thought process was, and those are just not in the record. If, in fact, the exigent circumstances defense to bargaining, I guess that's what it is under the statute, right? It's a defense to what would otherwise be an obligation to bargain. Right. If that's inapplicable for the reasons that you're suggesting. In your view, is COVID irrelevant, or does COVID play in here at all? It's not entirely irrelevant. I mean, you can consider, I suppose you can consider the surrounding circumstances when you look at the negotiating history. But it's certainly not a get out of jail free card, as it might be in an exigent circumstances case. I would just say the circumstances is a get out of jail free card. Well, if it were proven, it would be a defense to the failure to bargain. But, I mean, you can consider the circumstances surrounding it, but the fact remains that the city did not bargain through impasse and interest arbitration before unilaterally implementing its mandate. That's pretty cut and dry. So tell me, how did the city unilaterally implement the policy? Because it seems like it kind of all started happening simultaneously. Going through the arbitration process, the city announcing the policy, the unions immediately disagreeing, and the arbitration process kicking into full gear. Well, I mean, I think this is in the stipulated record, supplemental volume 3, and I would direct the court to pages 21 through 29. I think the dates to key in on would be October 7th of 2021, the parties had just had a bargaining meeting, and they discussed 15 facts that had previously been discussed between the parties. That same day, the unions emailed the city, and they said that the meeting was productive, and they noted matters in which they felt they could reach agreement. The very next day, before responding to the unions, the city said it announced that its policy was going to be in effect. Two days later, the unions sent a letter that objected to the unilateral implementation of the policy. Two days after that, so this is four days after it implemented its policy, the city sent a letter. It announced the implementation of the policy. It announced that they needed to be fully vaccinated by October 15th, 2021, and if we're calling back on our experience during the pandemic, to be fully vaccinated on their own.  Yeah, exactly, two shots, and I believe it was a 14-day waiting period after the second shot. So, the policy was in effect. Four days after they announced that implementation, that's when they sent their purported last, best, and final offer, which turns out that even when the unions rejected that offer, the city indicated it was still willing to negotiate. So, there was not a true impasse when they announced their policy, but you don't even really need to deal with the impasse issue because there was no interest arbitration before they implemented their policy either, and that's a requirement here. And just, I think you said it, but just to be clear, in your view, until the city negotiated effects, bargained effects, or reached an impasse, and went to interest arbitration on effect, they couldn't actually put the policy in place. With respect to these unions, yes. With the other unions, there's not a right to interest arbitration because... I'm talking about these unions. They couldn't do anything. They couldn't put a date out there. They couldn't do anything, in your view, without negotiating effects. They couldn't punish anybody. They couldn't put them on unpaid leave. They couldn't say this is the date you have to do it. They couldn't say you have to report your vaccination status. They couldn't do any of that until you bargained out the effects. That's your position. That's right. Okay. Does the record show whether or not the city actually punished or disciplined anyone prior to the arbitration being completed? No, because the policy didn't even go into effect until the arbitration was over. Right? Am I right? It didn't go into effect until he told George Reynolds that March 3rd, 2022. That's when it started. I have to say I don't know the answer to your question. I will defer to the Union's Council on that point. Would you agree that there are only three officers at issue here? I would have to... Well, that may be for certain issues, but I don't think it's with respect to back pay and other issues like that, but I'll defer to the Union's Council on that point. Thank you. If there are no further questions, I'd ask that the Court confirm the Board's order. I don't think we have any further. Thank you.  Good morning, and may it please the Court, Naomi Frisch on behalf of Slot 7 and the Police Union. To address your most recent question, discipline occurred of these officers almost immediately after the city implemented the policy and before, long before, the grievance arbitration, before arbitrator removal. Implementation was when? October 8th, 2021. The Union's bargaining with the city on October 7th over 15 effects issues. The very next day, the city implemented the policy without responding to the Union's request for further bargaining. This was completely improper, and that itself was the violation of the act. And what about discipline? Just a few days later, after October 16th, which was the original deadline for employees to get vaccinated, the city began a systematic and overly punitive scheme of discipline against these police officers. And let me explain. How many? Hundreds, actually. And they've been resolved through the arbitration process, but not completely. And this is important, and I'm happy to walk you through it and explain it. But they had a remedy, and they exercised that remedy for their personal injury. They had a remedy for the discipline that was issued for Rule 6 violation. They did not have a remedy, and still do not have a remedy, for the improper issuance of suspension, stripping of police powers, and further discipline that was issued as a result of the unlawfully implemented policy, which has now, by the way, been rescinded, and officers are still awaiting their termination for violating a policy that is no longer in existence. And we find that very problematic. But I will walk you through what happened here, and I want to point to the plain language of the policy. There's two sections of the policy, Section 4 and Section 5. Section 4 sets forth a requirement to get vaccinated in the first place. And in Section 4, there is a nondisciplinary no-pay consequence, which is followed by the possibility for discipline for failing to be vaccinated. Section 5 discusses the requirement to report vaccination status into the vaccine portal. That section does not include a disciplinary consequence. The only consequence in Section 5 is nondisciplinary no-pay status. As of October 15th, when that policy went into effect, approximately 4,000 officers had not reported their vaccination status into the portal. The city could not have put 4,000 officers on no-pay status all at once. We acknowledge and understand that. That would have created a huge safety issue. So instead, the city unilaterally changed its policy, which, by the way, the board found was an independent violation of the act, which the city has not raised any arguments about to this court and must, therefore, be upheld. An independent violation of the policy. Officers were systematically called down, told to comply with the policy, or advised counsel to comply with the policy. If they did not comply, they were stripped of their police powers, which, by itself, is an independent form of discipline. Then they were ordered, given a direct order, to comply with the policy. That direct order is what resulted in the discipline that Arbitrator Rummel resolved, not the original violation of the policy. The city recommended for these officers 90-day suspensions, 180-day suspensions, and in some cases, termination for a simple little fix violation, which Arbitrator Rummel himself said was overly punitive and did not comport with the scheme of this cause. This was a complete deviation from the policy as it was. It happened before the grievance arbitration. It happened during the time that Judge Mitchell said you cannot undo the vaccine and save the implementation of the mandate. So I think it's very, very important. And I want to transition. But were those remedies, tell us the extent to which those were remedies, like grievances before Rummel or grievances before anything? Again, I think that the suspensions that were issued for the Rule 6 violation, for the most part, have been remedies. And Rummel, in one of the supplemental awards. In the supplemental awards. But the original no-paid status, stripping of police powers, not remedies. Did the union try to bring that to Rummel, the no-paid status, or no? I think that would be an effect of the policy that Rummel would not have jurisdiction to. So they never brought it to Rummel. I think the union brought to Rummel the excessive discipline that resulted with the Rule 6 violation. The failures, which were suspensions. Which were the result of a direct order and not necessarily the initial violation of the policy. Is there anything right now that would prevent them from taking those issues to Rummel or some other arbitrator? Yes. Rummel declined to exercise jurisdiction over the three officers who are pending discipline, which means he did not resolve all of the effect issues, even if you could call this discipline an effect of the policy, he did not resolve it. And that leaves the unions without a remedy if this matter is not affirmed. What is their remedy by the board? What remedy does the board give them? The board can give them make, hold, back, pay with, interest, etc., which they cannot get through the police board process. Did Rummel specifically uphold the part of the policy that put officers on no-pay, non-disciplinary status? I think Rummel told the parties that the city had the right to implement the policy and then he told them to further bargain over some of the effects. I'll also point out that a few days later, after Rummel's award, the city unilaterally rescinded the masking policy that it had in place, which the board also found was an independent violation of the act that the city did not argue against in its brief and should be upheld. So instead of bargaining with the unions, as Rummel suggested, so even if you say that his order had something to do with resolving effects issues, the city didn't bargain, they just unilaterally changed their policy. So to say that they don't... What is the remedy for them changing the masking policy? Well, I think that at this point, because the policy has been rescinded by the city also unilaterally, I think at this point there's not much to be done unless and until there's another vaccination policy to be put in place. And then I would hope that the parties would have lesson learned. I do want to point out here that before the city's unlawful implementation of the policy on October 8th, if the parties had simply continued bargaining to impact them through interest arbitration, it's very, very likely that that process could have been completed by the April deadline that Rummel set for the officers to get vaccinated. So the city instead chose to unlawfully implement this policy and invite five years of unnecessary litigation rather than just bargaining. And I don't think that the result should be that, oh, they get to just rescind the policy with no remedy whatsoever. Was the policy rescinded because we're no longer in a pandemic? You'll have to ask the city that. That happened after this appeal was filed. Okay. I mean, I'm sure the city thinks that the unions that keep litigating and the unions who- and there's been a lot of litigation over this. Yeah. So I guess that leads me to the same question I asked the city. How much is really at issue? How many people have been financially injured? How many of your members have been financially injured? So as I mentioned, there are three officers who have been off without pay since October or November of 2021. They are awaiting termination. There are more than ten officers, we're not sure the exact number, who are still stripped of their police powers. They are in paid status, but they've been stripped of their police powers and have not been allowed to return to work because of their failure to report for status. And, again, there are hundreds of officers who experience no paydays as a result of the unlawfully implemented policy. So we don't know the entire scope, but we think it's a little broader than what the city describes. Going back to the effects that were decided by Romel, would it be safe to say that he resolved those effects that were imminent at the time, that needed to be resolved, could not wait for the board to decide them? And then leaving those effects that were not, I guess, time-sensitive for the board at a later date? I think the only effect that you could honestly, you could truly say that Romel actually resolved prior to implementation was the actual date, that he moved the date for the officers to get vaccinated. And even the, I'm sorry, and I think the rest of those effects were not fully resolved. I think he did his best to address the dispute between the parties, but by the time the union brought these disputes to arbitrary Romel, it was too late. The city had already violated the act numerous times. They had failed to provide information. They had failed to bargain in good faith. They had unilaterally altered their policies. And, you know, what are the unions to do at that point? They have members facing excessive punitive discipline. Their only recourse at that point was to go to Romel. That's not an interest arbitration. That doesn't have the hallmark of an interest arbitration. And, you know, that requires the knowing participation of both parties. And nobody at the time thought that was an interest arbitration. And to argue now that it was, especially because it did not take place prior to implementation, does not cure the violation of the act. Okay, so let's say it's not an interest arbitration. Is it not an interpretation of the contract in these given circumstances, including the fact that we're in the midst of a COVID vaccine or COVID crisis? Can it not be interpreted as Romel saying, I'm going to interpret the contract that says, yes, you can say, you can do this, this, this, and this under your banishment contract. It may be a very broad reading of the contract that the unions and the board would disagree with, but can it not be interpreted that way? Yes, absolutely. Arbitrator Romel can interpret the contract and did interpret the contract. But to allow the city to do what it did, to allow the city to implement the vaccine mandate, which is not before this court, the only thing that's before this court is whether or not Because the board agrees that until there's a goading, there can't be a goading that the city can impose unilaterally, because that's not part of the implementation, that's part of the effect. So according to at least the board, it can't really go into effect. It's a hypothetical policy, but how it's going to be put into effect can't happen without negotiation, and negotiation and impasse is necessary. And if that's the case, then that negotiation did not happen. I agree with you, I agree with you. It certainly didn't happen before it reached place. But is it your position that it can't go into place without that bargaining? Yes, and if our position is that had they bargained, it would have been. Right. But the reality is it did go into place without bargaining on the effect. Everybody agrees with that. But Rommel says stop. What do you do with the fact that Rommel says stop? Stop.  That's it. Yeah, if you have Rommel saying the contract's allowing you to put this into place, as long as you do it in a reasonable manner, and a reasonable manner, which he kept using that word throughout his award, a reasonable manner is going to encompass some effect. I think it's telling that there is not much evidence in the record about what happened after Rommel's award in terms of discipline or consequences for failure to comply. And I'm not sure why that is, but I think it's an interesting question to know that there was a lot of litigation, there was a lot of questioning while the union still had a chance to stop it. And by the time we got to April of 2022, I'm not sure what changed, but I don't think there's a lot in the record about how aggressively the city enforced the policy once Arbitrator Rommel said go ahead in that case. Okay, but that doesn't answer my question. How could Rommel say go ahead if Rommel had no authority to decide the effect? Because go ahead is an effect. I don't think we're saying that Rommel had no authority to decide the effect. I think we're saying he did not decide all of the effects. Okay, he did not decide all of them. That's probably totally true. But he decided some of them, and he decided some of them, and the city complied with what he decided on those effects. But that itself does not, even if that's true, that itself does not cure all of the city's violations of the act, and there needs to be a remedy for all of the violations. But that's where you lose me, and I'm sorry, I'll let you go. But if he decided it, then wasn't the board required to defer to his interpretation, no matter how much they disagreed with it? I think whether or not the board was required to defer to that portion of his decision, I don't know if the board has authority to partially defer to part of a decision about effects. They can defer on the underlying decision, and they can defer or not on effects, but I don't think they can pick and choose which effects they want to defer to or not. And I think that because the board has discretion to say, we're going to defer or we're not going to defer, and because the board has more expansive authority in terms of ordering a remedy, the board can look at Arbitrator Romel's award and say, well, maybe he decided some of the effects, but he didn't remedy everything. He didn't decide all of the effects, and therefore deferral is not appropriate here, because we as a board have the power to review that and to make an independent determination and decide a remedy, and furthermore, administrative efficiency is another consideration that the board has when deciding to defer. There had already been, at the time of the city's quote-unquote renewed motion to defer, there had already been a stipulated record and briefing presented to the ALJ that she considered as 125 exhibits and thousands and thousands of pages of documents and made an independent determination that the city failed to bargain effects. So you're stating that the board can't decide to defer to those issues that were resolved and just say, well, these weren't resolved, these are still outstanding, we'll just focus or decide these issues. I'm not sure if they can or can't, but I know they did not in this case, and I don't think that the city has made sufficient arguments that show that that was clear error and should be overturned. So what was the remedy ordered by the board? The remedy order was to rescind the policy, to go back to bargain with the unions through impasse and interest arbitration if necessary, and to make the employees whole who were affected by the unlawful implementation of the policy. So couldn't we again say that the board was correct in finding unfair labor practice, but abused its discretion on a remedy, particularly since the pandemic is over, and you're saying go back and negotiate on something that's of no moment? I'm saying that the portion of the remedy that remains that's extremely important is the make whole portion, that you have officers who've been severely harmed by this decision, which is no longer in effect, and are still not working, even though that requirement no longer exists. So that's just the 13 employees, or there were some effects or damages, if you will, to the 4,000 officers that you mentioned earlier? I don't believe it's quite as big as 4,000. It's not just the 13, you're referring to the whole? I believe that there are officers who experienced no paydays and have not had those no paydays returned. So the way you see this going forward, if you had to order the world, is that it would go back and the city would now have to negotiate and bargain with the union on discipline and punishment. And then if there's an impasse about that, then you would go to an arbitrator or back to the board? If the city wished to reinstate the policy at this point, then yes, that's what we would have to do, I believe. But since the city does not wish to have the policy anymore, then their unlawful implementation and their commission of unfair labor practices must be remedied. And I believe that's the make whole remedy that the board is looking for. So basically undo all the discipline and all the loss of pay that anybody experienced by the city's implementation? Yes, that's correct. Why not negotiate over even if the policy is rescinded? So why not negotiate then on what the discipline should have been or should be? Because at this point, again, if the policy is not in effect, then... What difference does that make? Well, I think you're right. Maybe the party should bargain over what discipline would be appropriate or what consequences would be appropriate for a future vaccine mandate. It's a little bit speculative, but... No, no, no, this one. But your premise is the bargaining has to happen before anything can come. That's what the law says, and that's what the city violated. Let me ask you about the information. Does that matter at this point? I think the information is relevant to the consideration of the reasonableness of the bargaining process. During the process, the information wasn't provided. At this time, in hindsight, would it be helpful to understand the usefulness of the vaccination policy?  I don't know. But, again, I think with respect to the information request, I think the board rightly found that the city did not provide sufficient information. I don't think the city's arguments are sufficient to overcome that finding. Okay. So assuming that that's all kind of moot right now, is there a separate remedy for that? Is there a monetary remedy? Is there legal fees? What does the city get on that one? I mean, what do you get? I don't want to speculate what the board would say was an appropriate remedy. I think what might be appropriate here is when the court hopefully affirms the board's decision to remand to the board for compliance proceedings so that that can be determined. But what if we reverse on the deferral issue of the policy itself and its effects? What happens to the information? Well, let me be clear that the board deferred on the decisional bargaining issue, and that's not an issue here. So the only thing is whether or not it was proper to defer to the effect. And the issues that remain are the information request issue, the unilateral alteration of the policy's disciplinary effect, the unilateral rescission of the maxing policy, and the unilateral rescission of the touching policy. And let's say we agree with you on all of those. Only, is there a separate remedy? Did the board, and you probably are more familiar with the board's decision than I am, but did it spell those out, the remedy for those? Or would you need to read it in to have the board consider those? I don't believe that the board separated the remedies by violation, but I still think that the McCall award is appropriate because of the number of independent violations of the act, and it's not unusual for the board to order that kind of a remedy when there are multiple violations. I see. And the McCall remedy essentially puppets all of that because it said go back to day one, undo everything that you did since day one when you should have negotiated over effect. Yes, that's correct. So that encompasses the non-deferral issues. Yes, that's correct. Okay. Thank you. If I could make one more point on the exigent circumstances since you raised it. I do want to point out, these are police officers who are facing the COVID-19 virus without a vaccine for 18 months before the city decided to implement that. They could get a vaccine. They could. But they were facing it without a requirement to get vaccinated. And so I think that itself belies the claim of exigent circumstances. They're police officers, but they have their own personal independent lives and decisions that they make for their health care independently, too. Of course. All right. Yes. The unions respectfully request that this court affirm the board's order. Thank you. Thank you. He would be very generous this time. But you're a liar. I will take another minute. With respect, respectfully, there were a lot of issues discussed and questions asked during the presentation, but we obviously defer to something we're going to be talking about soon. And then I will let you talk. But what about their point that this can't be perceived as interest arbitration because it happened after the implementation? So, again, let's get to the distinction between the decision on the policy and the effects of the policy. And at the time of the implementation of the policy in mid-October of 2021, those effects had not transpired yet, and the city was still willing to discuss with the unions, and the city made this point in its brief to the labor board, ALJ, to the board, as well as in this court. The decision could be implemented. The effects could continue to be bargained. The unions at no point asked for additional bargaining sessions with the city in response to that opening. What the unions did, and to Your Honor's point, litigation did ensue, and that was at the behest of the union. The union filed on the labor practice charges, the union filed grievances, and the unions proceeded to march into court to restrain the city from implementing the policy at all in order to preserve the status quo, which was exactly what happened. Judge Mitchell issued that TRO. He ordered that there had to be an arbitration, and that is exactly what the city did. And he indicated while the city said, no, it can't be expedited, he indicated in his order, you know what, city, that's on you. You could make this expedited. You could make this happen. And that's exactly what the city did. It complied with that order. It proceeded to an expedited arbitration proceeding before Rommel. It started with a mediation just like every other interest arbitration does. It then proceeded to a disputed white arbitration over what is the policy going to be, and specifically is no-pay status a part of that policy. That was absolutely presented to and decided by arbitrator Rommel in the context of an interest arbitration. That's exactly what he decided. No-pay status was allowed. To now contend that arbitrator Rommel didn't decide that as an effects issue is just wrong. But did he decide it as a matter of interest arbitration, or did he decide it as a matter of what the collective bargaining agreement already provided, or does it matter? It does not matter. Again, that elevates form over substance. That was a term that he decided that was disputed between the parties, that the parties submitted essentially final positions, final offers, if you will, on that particular issue. The city said this is no different than any other minimum qualification for employment, including fitness for duty standards. If you don't satisfy these minimum qualifications, no-pay status occurs. That was no different than arbitrator Rommel, upheld it as a term under this collective bargaining agreement. If the board's remedy of rescission and make whole relief is affirmed, how should the court ensure that the remedy is proportional and does not unduly burden the city? At this point, the labor board has found an unfair labor practice and has issued certain remedies to remedy that, and certain orders, a bargaining order, rescission of the policy, an affirmative bargaining order to the city to sit down and follow the unions, to bargain about the vaccine mandate and its effects, not the decision but the effects of that vaccine mandate, and to make whole anybody adversely affected, and then proceed to bargain to impasse, which would also entail interest arbitration. Whether that's complied with then becomes a matter for a compliance proceeding before the ALJ or before the labor board. And there is a compliance officer, at least the last time I checked, and there is a compliance proceeding that would then ensue. It wouldn't be for this court to insure or police, so to speak. The remedy would be something the city would have to comply with, and if there was an issue about the city's compliance, that would go back in front of the labor board for rescission. But the labor board has issued its remedy here. Period. End of story. If it's affirmed, the city will then either take an appeal to the ALJ Supreme Court, and challenge continues, but if it doesn't, that becomes an issue for the labor board in a compliance proceeding. Do you agree with the unions that if we reverse impart, that we have to go back to the board for the remedy on whether there is a remedy, and what the remedy would be for the information, for the failure to provide information, and for the changes that the unions say the city made in the policy? I don't know that that issue is before the court on a remedy issue. If you're going to remand and have the board, with a remand order to the board, to consider different remedies, obviously that would be an issue. But at this point, I'm not aware that the remedies have been put into dispute at this point. Well, certainly, that's the affirmative for the board in total, that knowing you're not really disputing that this is the right remedy, if they were right, substantive. Correct. The remedies they issued are the traditional standard make-all remedies for a refusal to bargain. I'm talking about the policy. I'm talking about the things that you did under the policy, and bargaining with states to impasse inherent interest arbitration. And what effect is there, then, that the policy has been rescinded? So that occurred after this appeal was filed, that from the city's perspective, that's irrelevant to, in fact, this proceeding, as well as to the remedy that the labor board is ordering. The idea that the council for the union suggested that we would be bargaining pursuant to this remedial order from the labor board on this particular one for labor practice about a future mandate makes no sense to me. It would be an affirmative bargaining order about that COVID-19 vaccine at that time, and that policy. The city respectfully requests that the appeal be granted and that the labor board's decision be reversed. Thank you. Thank you, everybody. And as you can see, very well briefed on both sides, all three sides, and really interesting issues. And we will keep this under assessment, and we believe we're in recess. Thank you.